[No. 20918.  Department One. — September 9, 1892.]

## THE PEOPLE, RESPONDENT, *v.* DENIS O'BRIEN, APPELLANT.

CRIMINAL LAW — MUTILATION OF PUBLIC RECORD — CONSTRUCTION OF CODE — CUSTODY OF RECORD — INDICTMENT. — Under section 114 of the Penal Code, making it unlawful for a person not an officer to mutilate or destroy any public record, construed in connection with section 113 of the same code, it is not material whether or not the record is in the custody of any officer, and an indictment for the offense need not so allege. The words "having the custody of any record," used in section 113, are used only to designate the officer who is punishable for the acts therein prohibited.

ID. — COPY OF ALTERED RECORD — STATEMENT OF OFFENSE. — An indictment for the offense of altering a public record need not set out a copy of the instrument altered, nor the substance thereof, but it is sufficient if it sets forth the offense charged in such a manner as to enable a person of common understanding to know what is intended.

ID. — CHANGING RECORD OF DEED — NAME OF GRANTEE — FACTS CONSTITUTING OFFENSE. — An indictment which alleges in substance that the defendant did wilfully alter and procure to be altered a certain deed record of real estate, setting out the number and page of the record-book, and that thereby the record was changed so as to read that the grantor therein named sold and conveyed the property to the defendant, when, as a matter of fact, and as the record stood before the altering, the deed conveyed the property to the defendant's wife, sufficiently alleges the facts constituting the offense charged.

ID. — TEST OF SUFFICIENCY OF INDICTMENT. — The fundamental test as to whether or not an indictment is sufficient is whether or not the act or

96  171
98  279
96  171
124  657
125  135
96  171
a130  490
96  171
132  499
96  171
137  454
96  171
147  714

omission charged as an offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case.

ID. — FRAUDULENT INTENT TO ALTER RECORD — IGNORANCE OF LAW. — It is not necessary, in making out the offense of altering a public record, to prove any fraudulent intention upon the part of the defendant; nor is ignorance of the law and innocence of any intent to violate its terms any excuse for a violation thereof.

ID. — CRIMINAL INTENT — STATUTORY CONSTRUCTION. — When an act in general terms is made indictable, a criminal intent need not be shown, unless from the language or effects of the law a purpose to require the existence of such intent can be discovered.

ID. — VALIDITY OF DEED — EFFECT OF RECORD. — Where a deed, as recorded, is valid upon its face, the record is notice to all the world of its contents; and it is immaterial, upon an indictment for the altering of the record that the instrument was void for objections not appearing upon its face.

ID. — CHARGE TO JURY — READING OF CODE. — Although the offense of altering a public record by a private person involves matter contained both in sections 113 and 114 of the Penal Code, it is not error to read only section 113 to the jury to inform them as to the acts prohibited, without reading section 114 in connection therewith, where the instructions embody all the information to be obtained from the latter section.

ID. — EVIDENCE — OTHER SIMILAR ACTS. — In a criminal prosecution for the altering of a public record, it is not permissible to introduce evidence concerning other acts by the defendant of the same nature as that charged in the indictment.

ID. — IMPEACHMENT OF WITNESS — PARTICULAR ACTS. — A witness cannot be impeached by evidence of particular wrongful acts.

ID. — CROSS-EXAMINATION OF DEFENDANT — DISCRETION AS TO SCOPE. — In a criminal prosecution, the trial court is not allowed the discretion as to the extent and scope of the cross-examination of the defendant which it is permitted to exercise in the examination of the other witnesses.

ID. — INSTRUCTION — TESTIMONY OF ACCOMPLICE — DISCREDIT OF WITNESS FOR DEFENDANT — CHARGE UPON MATTERS OF FACT. — In a criminal prosecution, an instruction to the jury that "the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution," is erroneous, where the accomplice has been called as a witness by the defendant, and not by the prosecution. Such instruction tends to discredit a witness for the defendant, and charges the jury with respect to matters of fact.

ID. — INSTRUCTION AS TO WEIGHT OF DEFENDANT'S TESTIMONY. — An instruction to the jury in a criminal action, directing their attention to the fact that the defendant had offered himself as a witness on his own behalf, and saying to them that in considering the weight and effect to be given to his evidence, in addition to noticing his manner and the probability of his statements, they could consider his relation to the case, and the circumstances under which he gave his testimony, the consequences to him resulting from the verdict in the case, and all the inducements and temptations which would ordinarily influence a person in his situation, having been sanctioned under the old constitution, must be considered as a part of a similar provision of the constitution of 1879, and cannot

be held erroneous. 'It would be better, however, to entirely omit such instruction from those asked and given on behalf of the prosecution in the future.

CONSTITUTIONAL LAW — JUDICIAL · CONSTRUCTION OF OLD CONSTITUTION MADE PART OF NEW. — The construction placed upon a provision of the old constitution becomes a part of a similar provision in the constitution of 1879, and cannot be departed from by the appellate court, although it should not have been so construed under the provisions of the old constitution.

APPEAL from a judgment of the Superior Court of Modoc County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. J. May, J. W. Harrington, D. W. Jenks,* and *A. L. Hart,* for Appellant.

*E. E. Copeland, Spencer & Raker, C. A. Raker, Attorney-General W. H. H. Hart,* and *Deputy Attorney-General Charles H. Jackson,* for Respondent.

PATERSON, J. — In May, 1886, J. H. Derevan conveyed to the defendant a tract of land in Modoc County. The defendant erased his own name, "Denis," from the deed, and inserted therein "Mary," his wife's name, thus making the deed purport to convey the property to Mary O'Brien, instead of to himself. In this form the deed was, at the request of the defendant, recorded in the office of the county recorder. Thereafter the defendant called upon T. B. Reese, the county recorder, before whom the deed had been acknowledged by Derevan, informed him of the change which he, the defendant, had made, and requested him to change the deed and the record so that both would speak the truth with respect to the transaction. Reese refused to make the changes unless Derevan and Mrs. O'Brien consented thereto. Their consent having been obtained, Reese erased the name "Mary" in the deed and also in the record, and inserted in lieu thereof the name "Denis" in each place.

The defendant was convicted of the crime of altering a public record, and was sentenced to serve a term of

two years in the state prison. From the judgment, and from an order denying his motion for a new trial, he has appealed.

1. Appellant claims that the demurrer to the indictment should have been sustained. It is insisted that the indictment is insufficient because it is wanting in the following respects: 1. It is not alleged that the record was in the custody of any officer; 2. It does not contain a copy of the writing alleged to have been altered, nor any sufficient description of the same.

It is conceded that the case is prosecuted under sections 113 and 114 of the Penal Code, and not under sections 470 and 471, which relate to the forgery of instruments and false entries in public records. Section 113 provides that "every officer having the custody of any record . . . . filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, willfully destroying, mutilating, defacing, altering, . . . . the whole or any part of such record, . . . . is punishable," etc. Section 114 provides that "every person not an officer such as is referred to in the preceding section, who is guilty of any of the acts specified in that section, is punishable," etc. The language of the indictment is: "The said Denis O'Brien, . . . . not being an officer such as referred to in section 113 of the Penal Code, . . . . did then and there willfully alter and procure to be altered a certain deed record of real estate, in book 7, pages 305, 306, of deeds, public records of Modoc County, state of California, whereby said record was changed, and made to read and to appear to read that one J. H. Derevan sold and conveyed certain real property to the defendant, Denis O'Brien, when, as a matter of fact, and as the record stood before the altering and defacing the same, the said deed conveyed said real property to Mary O'Brien, the wife of the defendant," etc.

It is sufficient to say, in answer to the first point urged, that section 114 makes it unlawful for a person not an officer to do any of the acts specified in section 113, with-

out regard to the question whether they are in the custody of the officer or not.   The words "having the custody of any record" are used to designate the *officer* who is punishable for the acts prohibited.   The offense which an officer having the custody of the record commits when he does any of the acts prohibited by section 113 is regarded by the law as a more aggravated offense than that which is committed by one who has not been intrusted with the safe-keeping of the record.

We think that the indictment alleges the facts constituting the offense charged with sufficient certainty. There are cases holding that it is necessary to set out a copy of the instrument, or the substance thereof, but they are not applicable under our system of pleading. Our code, in matters of civil and criminal procedure, is no friend of old precedents which were introduced into the law in an age of legal and scholastic refinements, and which Lord Ellenborough justly condemns as a *blemish and inconvenience in the law and the administration thereof*.   Substance, rather than form, conciseness, and clearness, are the canons of code pleading.   If "the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended," the indictment is sufficient.   "Is the act or omission charged as the offense stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case?" That is the fundamental test.   (Pen. Code, sec. 959.)

2. It is urged with much earnestness that no offense could have been committed by the defendant, because there was no intention on his part to do an unlawful act, his object being simply to rectify a wrong already done. It is admitted that the defendant was not excusable for procuring the deed to be recorded in its altered form, but it is insisted that his subsequent attempt to rectify the error cannot be deemed a crime.   The attorney-general admits that the evidence fails to show any fraudulent

intent on the part of defendant, and the question presented is, whether it is necessary, in making out the offense, for the prosecution to show that the act was done for some sinister purpose.

It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit any one to gainsay. It is expected that the jury and the court, where it is shown that in fact the defendant was ignorant of the law, and innocent of any intention to violate the same, will give the defendant the benefit of the fact, and impose only a light penalty. (1 Bishop's Crim. Law, sec. 2961; Wharton on Negligence, sec. 411.) The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement. If a person accused of crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result. No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration. The plea would be universally made, and would lead to interminable questions incapable of solution. Was the defendant in fact ignorant of the law? Was his ignorance of the law excusable? The denser the ignorance the greater would be the exemption from liability. The absurdity of such a condition of the law is shown in the consummate satire of Pascal, where, speaking upon this subject, he says, in substance, that although the less a man thinks of the moral law the more culpable he is, yet under municipal law "the more he relieves himself from a knowledge of his duty, the more approvedly is his duty performed." It is a familiar rule, that to constitute crime there must be a union of act and intent; but our code provides that "the word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any

intent to violate law, or to injure another, or to acquire any advantage." (Pen. Code, sec. 7.) In *Halsted* v. *State*, 41 N. J. L. 552, 32 Am. Rep. 247, this subject was carefully considered and elaborately discussed. After reviewing the authorities, the court reached the conclusion stated in the *syllabus*, viz., that "when an act, in general terms, is made indictable, a criminal intent need not be shown, unless from the language or effects of the law a purpose to require the existence of such intent can be discovered. The question appertains to the department of statutory construction, and to introduce into the act the requisite of a guilty mind, it must appear that such was the intent of the law-maker." In *State* v. *McBrayer*, 98 N. C. 623, the court said: "It is a mistaken notion that positive, willful intent to violate the criminal law is an essential ingredient in every criminal offense, and that where there is an absence of such intent there is no offense; this is especially so as to statutory offenses. When the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent, although the offender was honestly mistaken as to the meaning of the law he violates. When the language is plain and positive, and the offense is not made to depend upon the positive, willful intent and purpose, nothing is left to interpretation." To the same effect are the following cases: *Commonwealth* v. *Weiss*, 139 Pa. St. 251; *State* v. *Gould*, 40 Iowa, 374; *Fiedler* v. *Darrin*, 50 N. Y. 443. A case directly in point is *Rex* v. *Ogden*, 6 Car. & P. 611. In that case the prisoner was indicted for unlawfully transposing from one piece of wrought plate to another the lion-poisson, contrary to the statute. It was conceded that the act was done without any fraudulent intention. The same argument urged here was made in that case, but the court said: "There are no words in the act of Parliament referring to any fraudulent intention. The words of it are, 'shall transpose or remove, or cause or procure to be transposed or removed, from one piece of wrought plate to another.'" The court considered the case a harsh one, and upon recom-

mendations made, the prisoner received his majesty's pardon.

It has been held that one who marries a second time under an honest but erroneous belief that a decree of divorce which had been granted was valid is afforded no protection by the invalid decree, and that evidence of his good faith will be excluded. (2 Wharton's Crim. Ev., 8th ed., sec. 1695 a.) The same principle is applied to many cases, such as selling intoxicating liquors to minors, abducting girls under a certain age, usurping an office under the belief that the usurper was truly elected, illegal voting under the belief that the voter is a qualified elector, publishing a libel in ignorance of its contents, storing gunpowder, and the like. (1 Wharton's Crim. Law, sec. 88; 2 Wharton's Crim. Law, sec. 1584; *Hill* v. *State*, 62 Ala. 170.) The only authority we have found holding contrary to the rule stated is the case of *State* v. *Gardner*, 5 Nev. 378, where it was held that a deputy sheriff, who had settled a suit against persons for doing business without a license, upon their payment of the costs and the amount of license, and had given them a paper written by his attorney and signed by himself, purporting to be a license, although it appeared he had no proper forms or blanks at the time, was guilty of no criminal offense under the statute making the issuance of such a license a felony, there being no fraudulent intention on his part, further than indicated by his mere naked act. That case, however, can be reconciled, perhaps, with other cases referred to, upon the principle stated in *Commonwealth* v. *Weiss*, 139 Pa. St. 251, viz.: " Whether a criminal intent or a guilty knowledge is a necessary ingredient of a statutory offense, therefore, is a matter of construction." The majority of the court in the Nevada case held that the legislature, by the act under consideration, did not intend to create an offense under the statute, unless some fraudulent intention on the part of the officer existed at the time he performed the act. Commenting upon this case, the court of appeals of New York say: "The case cited from 5

Nev. 378, tends to support the views of the plaintiff in error, but it is evident that a majority of the court struggled to relieve the defendant from a harsh punishment for a comparatively innocent act." (*Gardner* v. *People,* 62 N. Y. 305.)

Sections 7, 112, and 113 of the Penal Code, when read together, clearly establish the proposition that it was not necessary in making out the offense to prove any fraudulent intention on the part of the defendant.

No hardship will result from the administration of the law as thus construed. The legislature has wisely given the court a wide latitude in fixing the penalty, evidently with the idea of meeting just such cases as this. The penalty fixed is " imprisonment in the state prison not exceeding five years or in a county jail not exceeding one year, or by a fine not exceeding one hundred dollars, or by both." Thus are provided appropriate penalties for all degrees of offenses committed under this act.

3. Another contention of the appellant is, that when the deed was offered for record it was not an instrument entitled to be recorded, and not being an instrument authorized by law to be recorded, a copy of it written in the recorder's book could not be the subject of a felony.

In support of this contention he relies upon *People* v. *Harrold,* 84 Cal. 567. The instrument referred to in that case was one which the law did not authorize to be recorded in the office of the county recorder. A record of it could under no circumstances give notice to the public of its contents. The deed under consideration was valid on its face; as recorded, the record was notice to all the world of its contents, and it is immaterial that the instrument was void for objections which did not appear upon its face. (*United States* v. *Turner,* 7 Pet. 136.)

4. It is claimed that the court erred in reading section 113 of the Penal Code to the jury without also reading section 114; that defendant, not being an officer, could not be convicted under section 113. But the court had

to read section 113 to the jury, to inform them as to the acts prohibited, and it was unnecessary to read section 114 after giving instruction No. 1, which embodied all the information the jury would have received from a reading of the last-named section.

5. During the cross-examination of the defendant, he was required, against his protest, to admit before the jury that he had participated with Reese in the alteration of a record other than that charged in the indictment in this case. Reese, also, in his examination, although protesting that such testimony would tend to criminate him, was compelled to answer similar questions. In the case of Reese the evidence was not admissible to impeach him, nor to show that the defendant had committed other offenses of the same kind about the same time. A witness cannot be impeached by evidence of particular wrongful acts. (*People* v. *Hamblin,* 68 Cal. 101; Code Civ. Proc., sec. 2051.) And while it is true that in certain cases, like forgery and embezzlement, it is permissible to introduce evidence concerning other acts of the same nature, for the purpose of establishing a guilty intention, no such rule applies in cases of this kind, where the very ground upon which the prosecution relies for a conviction is, that a performance of the acts mentioned in the statute constitutes a crime, regardless of any fraudulent intention.

The ruling of the court in the cross-examination of the defendant upon this subject was erroneous, for the additional reason that the questions propounded to him were not proper cross-examination as to anything related in his examination in chief. So far as the defendant is concerned, the court is not allowed that discretion as to the extent and scope of the cross-examination which it is permitted to exercise in the examination of the other witnesses. (*People* v. *Rozelle,* 78 Cal. 92.)

The court instructed the jury that "the testimony of an accomplice ought to be viewed *with distrust,* and the evidence of the oral admissions of a party with caution." The code authorizes this instruction to be given to the

jury on all proper occasions. (Code Civ. Proc., sec. 2061.) But we do not think that this was a proper case for such an instruction, although it may be proper to give it in a case where the witness has been called by the people. (Pen. Code, sec. 1111.) It, in effect, told the jury not to believe the testimony of one of the defendant's witnesses, — at least, to discredit it; that is the meaning of the word "distrust." This the court had no right to do. Our constitution provides that "judges shall not charge juries with respect to matters of fact." (Const., art. VI., sec. 19.) To tell the jury what weight to give or not to give to any particular evidence is to express an opinion upon a matter of fact. We took occasion to refer to the latter clause of this provision of section 2061 of the Code of Civil Procedure, in *Kauffman* v. *Maier*, 94 Cal. 283, and disapproved of the instruction which embodied it, on the ground that it is unconstitutional.

7. The court also gave an instruction which has been several times approved here, — with some hesitancy and criticism, however, — directing the attention of the jury to the fact that the defendant had offered himself as a witness on his own behalf, and saying to them that in considering the weight and effect to be given to his evidence, in addition to noticing his manner and the probability of his statements, they could consider his relation to the case, and the circumstances under which he gave his testimony, the consequences to him resulting from the verdict in the case, and all the inducements and temptations which would ordinarily influence a person in his situation. This instruction received its first sanction from courts acting under constitutions which had no such inhibition as that found in section 19, article VI., of the constitution, and never ought to have been approved here; but as the provision of the constitution referred to is the same as that of the constitution of 1879, under which there were decisions holding it was not error to so charge the jury, the construction which was placed upon it by those decisions has become a part

of the provision itself, and we are not at liberty to depart
from it.   As a slight change in the phraseology of the
instruction, however, is liable to be construed as going
beyond the limits of what has been approved, it would
be a safer course, and one which would work no injus-
tice to the people, if it were entirely omitted from the
instructions asked and given on behalf of the prosecution.

Judgment and order reversed, and cause remanded
for a new trial.

HARRISON, J., and GAROUTTE, J., concurred.