[Crim. No. 328.   Second Appellate District.—May 29, 1914.]

THE PEOPLE, Respondent, v. W. A. IDEN, Appellant.

CRIMINAL LAW—SALE OF DAIRY COWS WITHOUT NOTICE TO MORTGAGEE OR BUYER—SUFFICIENCY OF INFORMATION.—In this prosecution for the sale of twenty-five dairy cows without informing the buyer of the existence of a mortgage on the cattle or the mortgagee of the intention to make the sale, the information was sufficient and set forth the particular facts of the offense charged.

ID.—IDENTIFICATION OF ANIMALS BY OTHER MEANS THAN BRANDS.—In such prosecution the mortgagee may be permitted to give testimony as to the identification of the cattle sold by other marks in addition to the brand on them.

ID.—PAYMENT OF MORTGAGE SUBSEQUENT TO SALE—EVIDENCE.—Evidence in such prosecution tending to show that the mortgage was paid by transactions occurring subsequently to the sale, and that ultimately the mortgagee did not lose anything by the defendant's acts in diminishing the security, was properly excluded.

ID.—SUBSEQUENT SALE BY MORTGAGEE—EVIDENCE.—An objection to a question propounded to the mortgagee as to what cattle he was preparing to sell at a time prior to the sale by the defendant, was properly sustained.

ID.—DECLARATION BY MORTGAGEE—ADMISSIBILITY IN EVIDENCE.—Objection was properly sustained to a question propounded to the mort-

gagee as to a statement made by him that he had not lost anything on the defendant and would not lose anything on him.

Id.—Subsequent Payment of Mortgage—Whether a Defense.—Payment of the mortgage, after the commission of the offense, did not constitute any defense to the prosecution.

Id.—Elements of Offense—Right of Mortgagor to Sell—Agency.— Section 538 of the Penal Code, defining the offense in question, requires that in making a sale of mortgaged chattels the mortgagor must, at or before making the sale, inform the prior mortgagee in writing by giving the name and place of residence of the party to whom the sale is to be made, and that he must also inform the purchaser of the existence of the prior mortgage. Therefore the defendant had a right to sell his cattle without permission of the mortgagee, by giving the information as required by law, and no question of agency was applicable to the transaction.

Id.—Accommodation Mortgage—Sale by Mortgagor—Evidence.—If the defendant claimed that the mortgage was made for accommodation and did not represent a real debt, the prosecution was entitled to inquire of the defendant concerning other transactions preceding the execution of the mortgage and apparently inconsistent with his testimony about an alleged debt owing from the mortgagee to him at the time of the execution of the mortgage.

Id.—Application of Penal Code in Case of Accommodation Mortgage. The claim of the defendant that the mortgage was given "for accommodation" implies that the note and mortgage were made to be pledged or otherwise used in some business transaction, and the maker of such a mortgage is no more excused from observing the provisions of the Penal Code than is the maker of any other chattel mortgage.

Id.—Instruction as to Credibility of Witnesses—Refusal to Give— Harmless Error.—The refusal to give an instruction, for the most part following the language of section 1847 of the Penal Code, as to the credibility of witnesses, was not prejudicial, if instructions are given which substantially cover the same ground.

Id.—Reasonable Doubt—Intent to Defraud—Refusal of Instruc- tion.—The court did not err in refusing to instruct the jury that in order to convict the defendant they must be morally certain not only that the defendant sold to the persons mentioned in the information, and at the time and place therein stated, one or more of the cows described therein, but they must be satisfied to a moral certainty and beyond a reasonable doubt that the defendant sold and delivered such cow or cows "with the intent in him to defraud" the mortgagee.

Id.—Intent to Defraud in Selling Mortgaged Property—Whether an Essential Element of Crime.—That part of section 538 of the

Penal Code which refers to the selling of mortgaged personal property does not make the intent with which the act was done an indispensable element of the offense; and when intent is not made an affirmative element of a crime, the law imputes that the act knowingly done was with criminal intent, and it need not be alleged nor proved.

ID.—INFORMATION—CLAUSE CHARGING INTENT—DISREGARDING AS SUPERFLUOUS.—If the information, charging the owner of mortgaged cattle with selling them without informing the buyer of the mortgage or notifying the mortgagee of the intended sale, alleges that the defendant's acts and omissions were "with intent to defraud" the mortgagee, this clause may be regarded as superfluous, and proof of such acts and omissions on the part of the defendant carries with it a necessary implication of intent to defraud both the mortgagee and the purchasers of the mortgaged property.

APPEAL from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

J. S. Clack, J. C. Thomas, E. G. Soule, Edwards & Smith, E. J. Fleming, and B. F. Woodard, for Appellant.

U. S. Webb, Attorney-General, George Beebe, Deputy Attorney-General, Frank Lamberson, District Attorney, and James M. Burke, Deputy District Attorney, for Respondent.

CONREY, P. J.—On information filed by the district attorney of Tulare County the defendant was accused of the crime of felony committed as follows: It was charged that the defendant, on or about the twenty-sixth day of September, 1912, at said county, was the mortgagor of the following described personal property, to wit: Twenty-five head of dairy cows, twenty-one head of which said cows were branded "I" on the left hip, and which said personal property was then and there located on certain real property described in the information; all of which said personal property had been theretofore mortgaged by said W. A. Iden and his wife to one E. A. Stellar by a mortgage dated July 18, 1912, to secure the payment of the sum of three thousand five hundred dollars by the mortgagors to the mortgagee, and which said

mortgage had been, on August 16, 1912, duly recorded and was on said twenty-sixth day of September, 1912, in full force and effect; that on said last named date the defendant at said county did willfully, etc., and with intent to defraud said Stellar, sell and transfer all of said mortgaged personal property to M. P. Costa and Lucy Seimas, "and the said W. A. Iden did not then or there, or at any other time, or at all, inform said M. P. Costa and Lucy Seimas, or either of them, of the existence of said prior mortgage, and the said W. A. Iden did not then or there, or at any other time or at all, inform said E. A. Stellar, mortgagee as aforesaid of said personal property, in writing, of said intended sale and transfer by giving the name and place of residence, or either of them, of the party to whom said sale and transfer was to be made"; and at the time of said sale the said personal property, to wit: said cows, were of the value of $47.50 per head, etc.   The defendant having been convicted after trial on this information and his plea of not guilty, appeals from the judgment and from an order denying his motion for a new trial.

The first proposition urged in behalf of defendant is that the information does not charge a public offense in that "it fails to charge the offense alleged to have been committed under section 538" of the Penal Code, and that it does not meet the requirements of section 952 of the Penal Code by directly and certainly alleging the particular circumstances of the offense charged.   The demurrer to the information stated these objections and especially set forth that "the information nowhere alleges that these were all the cows in the said mortgage, and if not all, it nowhere alleges in said information which cows, nor does it give the description therein alleged to have been made."

The information was sufficient and set forth the particular facts of the offense charged with all necessary certainty.   The mortgage was referred to in such terms that the defendant could not be at any disadvantage in knowing whether it was the mortgage which had been made by him.   If he had not made it, that fact alone would be his complete defense.   If he had made the mortgage, then he would know whether twenty-five cows were all or less than all of the mortgaged cows.   If the mortgage described more than twenty-five cows, then under this information he was not told which ones of the

total number mortgaged he was charged with having unlaw-
fully sold. But this was an item of evidence and not an essen-
tial element in description of the offense charged. The case
is appropriate for application of the rule stated in *People* v.
*Platt,* 67 Cal. 21, [7 Pac. 1], where the court said: "We think
the defendant is sufficiently apprised by the information of
the charge which he must be prepared to meet on the trial.
If innocent, there is no more danger of his being convicted
than there would be if the property had been described with
the greatest minuteness, although his chance of escape, if
guilty, might have been much better if it had been so de-
scribed.".

The first and principal witness for the prosecution was the
mortgagee, E. A. Stellar. The mortgage was received in evi-
dence and in it the cows and heifers are separately described
and are consecutively listed by numbers from one to one hun-
dred and sixteen. There appear to have been seventy-three
cows and forty-three heifers. The note and mortgage are
dated July 18, 1912, and the note by its terms was to mature
July 18, 1913. The affidavit to the mortgage was subscribed
and sworn to by all the parties on July 19th, and was acknowl-
edged by the mortgagors before a notary on July 19, 1912.
There was also a form of acknowledgment before the notary
by E. A. Stellar on August 10, 1912, and the mortgage was
recorded in Tulare County on August 16, 1912.

The witness Stellar testified that on August 3, 1912, he went
with the defendant to a place known as the Sherman Ranch,
and an adjacent eighty acres which had been leased by Stellar
to the defendant, there being a road between the two places;
he took the mortgage and compared the stock that was de-
scribed in the mortgage with the stock that he viewed; that
about one hundred of the animals were in one field and the
others were on the leased land above mentioned; that he saw
the cattle there and that he and the defendant both saw them
and discussed them there together. Stellar further testified
that afterwards, on the tenth day of August, 1913, he saw
on the ranch of Mrs. Lucy Seimas in Kings County twenty-
eight of the cattle that were placed under that mortgage; that
he identified them by the description contained in a certified
copy of the mortgage which he had with him. The witness
then gave the numbers as given in the mortgage, of twenty-

two of these cattle, and gave testimony in detail concerning the marks thereon. He further stated that he did not, on the twenty-sixth day of September, 1912, or at any time, receive any notice in writing or otherwise from the defendant or any other person of any intended sale of any cattle named in that mortgage, or of the name and place of residence of any person to whom they were to be sold.

It was admitted by the defendant that on September 26, 1912, he sold thirty cows to M. P. Costa and Lucy Seimas, but denied that any of them were cows that had been included in the mortgage. It was proved by the testimony of Costa that the defendant did not give to Costa or Seimas any information of the existence of a prior mortgage on the cattle sold to them. In addition to the defendant's denial that those cattle were covered by the Stellar mortgage, the defendant claims that he had a right to make sales of the mortgaged cattle without giving the notices required by the Penal Code, first, because at the time of the sale defendant did not owe Stellar anything on the mortgage, and also because Stellar gave him an oral permission to do so. The numerous specifications of error set forth in the briefs for appellant relate almost entirely to rulings by which the court limited the cross-examination of Stellar and the direct examination of the defendant by his counsel upon matters which they claimed were relevant to these lines of defense.

The defendant objected to the introduction of testimony by which Stellar described the cattle that he saw on the Seimas place and identified them by other marks in addition to the "I" on the left hip. Defendant claims that the overruling of this objection was a flagrant error, but we are unable to perceive any reason why the court should have refused to receive any testimony descriptive of the property, by which the witness was enabled to say that it was the same which he had previously identified in connection with the making of the mortgage. The objection is without merit.

It is contended by appellant that the court erred in refusing to permit him to introduce evidence showing that the mortgage debt had been paid; but the pages of the transcript cited in the brief contain nothing that relates to the point suggested. We are not under obligation to search through seven hundred and fifty pages of transcript to find something which might

prove the alleged error. We do find, however, that the court did several times assure defendant's counsel that if they had any evidence showing that the mortgage was paid, or that the defendant was authorized to sell the property, they might present such evidence. The difficulty experienced by the defendant in the introduction of his testimony along this line arose out of the fact that his counsel persistently offered questions designed to show that the mortgage was paid by transactions subsequent to September 26, 1912, and that ultimately the mortgagee did not lose anything by reason of defendant's acts in diminishing the security.

On defendant's cross-examination of the mortgagee (the witness Stellar) the court sustained the objection made to a question in which the witness was asked to state what cattle those were which in answer to the next preceding question he had said that he was preparing to sell in August, 1913. The ruling was correct. The charge against the defendant was that on September 26, 1912, the defendant had sold a part of the mortgaged cattle without giving the information required by the statute. Even if in August, 1913, the mortgagee undertook to sell the same cows which the defendant was charged with selling wrongfully in 1912, such proceeding by the mortgagee would have no bearing upon the truth of the facts charged against the defendant, or the guilt or innocence of the defendant. And if the object was to show that ultimately the mortgagee obtained full payment of the debt, that also was immaterial. The case against the defendant was to be determined by two facts, both relating to September 26, 1912,—namely: whether the mortgage debt was unpaid and whether the defendant sold some of the mortgaged cows in the manner and under the circumstances charged in the information.

The record does not sustain appellant's claim that the court erred in refusing to hear evidence about partnership transactions between Stellar and defendant Iden. Counsel for defendant say they would have shown that the mortgage was only an "accommodation mortgage." The court, while declining to allow "extended examination or hearing of evidence as to partnership deals," further said : "If you have any special transaction which shows that the mortgage was paid, or that the defendant was authorized to sell the property, you

can do so.'' This gave the defendant ample liberty to develop this line of defense. The defendant was allowed to testify on this subject and stated that at the time this mortgage was made Stellar was indebted to him in the sum of seven thousand six hundred dollars; that the mortgage was made as an accommodation mortgage; that Stellar was to care for it; that the defendant never received from Stellar any money on the mortgage, except the sum of two thousand dollars.

The court did not err in sustaining the objections made on cross-examination of Mr. Stellar to questions asking the witness whether he had not stated, in August, 1913, that owing to certain deals which he had made with Mr. Iden he had not lost anything on him and would not lose anything on him. The court held that ''the payment of the mortgage after the offense is committed, if it was committed, does not constitute any defense to the action.'' It would scarcely need authorities to support this ruling, but the rule has been affirmed under a similar statute in Alabama. (*Steed* v. *Knowles*, 79 Ala. 446; *Nixon* v. *State*, 55 Ala. 120.)

The court was justified in striking from the record testimony of the defendant that in the first week of August, 1912, the defendant said to Stellar that defendant would have to sell some cows to care for the rest of his cattle, and that Mr. Stellar replied: ''Sell the cows. You are my agent up here and I am your agent down there. Whatever you do is all right. I will take care of that mortgage.'' The only reason given by defendant's counsel in response to the motion to strike was, ''We are relying on agency.'' The Penal Code, section 538, defining the offense charged herein, requires that in making a sale of mortgaged chattels the mortgagor must, at or before making the sale, inform the prior mortgagee in writing by giving the name and place of residence of the party to whom the sale is to be made; and must also inform the purchaser of the existence of the prior mortgage. Defendant had a right to sell his cattle without permission of the mortgagee, by giving the information as required by law. No question of agency was applicable to the transaction.

On cross-examination of the defendant by the prosecuting attorney, the court did not err in admitting questions designed to meet the direct testimony of the defendant that at the time when defendant made this mortgage to Stellar there was an

indebtedness then existing of seven thousand six hundred dollars, owing from Stellar to Iden. Counsel for defendant in their brief say that this statement had been stricken from the record, but the record shows the contrary. The fact thus asserted by defendant was connected with his claim that the mortgage was made for accommodation and did not represent a real debt. The prosecution was therefore entitled to inquire of defendant concerning other transactions preceding the execution of this mortgage and apparently inconsistent with his testimony about the seven thousand six hundred dollars. Moreover, the claim of defendant that this mortgage was given ''for accommodation'' implies that the note and mortgage were made to be pledged or otherwise used in some business transaction, and the maker of such a mortgage is no more excused from observing the provisions of the Penal Code than is the maker of any other chattel mortgage. Further, it should be noted that during an argument to the court (the jury having been excused in order that such argument might be freely made) the defendant's attorneys were endeavoring to establish their claim of right to show transactions between Stellar and Iden subsequent to the date of the alleged crime, and their claim then was that certain of those transactions resulted in ''paying off the Iden mortgage down to within something like $200 and $300.'' The court, while ruling out these subsequent transactions, stated to defendant's counsel: ''If you can show that Mr. Iden never received any money on this mortgage, that it was paid at the time it was made, or before it was made, you may show it.'' The court very correctly held to the fact that this case was a prosecution by the state for a public offense, and not a settlement of accounts between Stellar and the defendant.

The instruction given to the jury on the subject of reasonable doubt is the standard instruction given and approved innumerable times. It does not contradict the instruction offered by defendant on the same subject, but substantially agrees with it, and the court's action, both with respect to the instruction given and the instruction refused, is approved.

The following instruction was offered on behalf of defendant and refused by the court: ''A witness is presumed to speak the truth. This presumption applies to the defendant, when he becomes a witness in his own behalf. But this presumption

applying to any witness in the case, whether he or she be the defendant or not, or whether the witness is interested or not interested in the case or the result, may be repelled by the manner of which he or she testifies, by the character of his or her testimony, or by his or her motives or by contradictory evidence, when such contradictory evidence is on a material issue of the case. You are instructed that your power of judging of the. effect of evidence is not arbitrary, but to be exercised with legal discretion and in subordination to rules of evidence. The jury are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." The principal part of the foregoing instruction follows the language of section 1847 of the Code of Civil Procedure, and no reason has been suggested showing why it should not have been given. We observe, however, in the instructions given by the court, that the jury was told that to the jury exclusively belongs the duty of weighing the evidence and determining the credibility of the witnesses; that the defendant was a competent witness in his own behalf; and a very full statement was made of the matters to be considered by the jury in determining the weight to be given to the testimony of a witness. In view of all these instructions given, the omission to give the requested instruction was without prejudice to any substantial right of the defendant.

Finally, it is claimed on behalf of the defendant that the court erred in refusing to instruct the jury that in order to convict the defendant they must be morally certain not only that the defendant sold to the persons mentioned in the information, and at the time and place therein stated, one or more of the cows described therein, but that they must be satisfied to a moral certainty and beyond a reasonable doubt that the defendant sold and delivered such cow or cows "with the intent in him to defraud the mortgagee named in said mortgage." In *People* v. *Wolfrom,* 15 Cal. App. 732, [115 Pac. 1088], the language of section 538 of the Penal Code is construed with reference to the phrase "intent to defraud," as contained therein. We agree with the opinion there expressed, that that part of section 538 which refers to the selling of mortgage property does not make the intent with which the act is done an indispensable element of the offense, and that "when the intent is not made an affirmative element of

the crime, the law imputes that the act knowingly done was with criminal intent, and it need not be alleged nor proven." As was said in *People* v. *O'Brien*, 96 Cal. 171, [31 Pac. 45]: "When an act in general terms is made indictable, a criminal intent need not be shown, unless from the language or effects of the law a purpose to require the existence of such intent can be discovered." So in the information in the case at bar, although it was therein set forth that the acts and omissions of the defendant were "with intent to defraud E. A. Stellar," this was a superfluous clause in the allegation, and the proof made of the said acts and omissions of the defendant carried with it a necessary implication of intent to defraud both the mortgagee and the purchasers of the mortgaged property.

The judgment and the order denying a new trial are affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 26, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1914.