Filed 8/23/16  Decker v. Pulapkura CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| ANDREW DECKER, | C076771 |
| Plaintiff and Appellant, | (Super. Ct. No. 178701) |
| v. | |
| SOLOMON PULAPKURA, | |
| Defendant and Respondent. | |

The trial court found plaintiff Andrew Decker to be a vexatious litigant pursuant to Code of Civil Procedure section 391, subdivision (b)(3)[1] and ordered him to furnish security for the benefit of defendant Solomon Pulapkura pursuant to section 391.3.  When Decker failed to furnish security as required, the trial court entered a judgment dismissing Decker's complaint against Pulapkura pursuant to section 391.4.  On appeal, Decker

_____

[1]     Undesignated statutory references are to the Code of Civil Procedure.

1

challenges the constitutionality of Code of Civil Procedure section 391 et seq. generally (hereinafter referred, at times, as the vexatious litigant statutes), and specifically, section 391, subdivision (b)(3), and further contends the trial court violated his constitutional rights and committed reversible errors in finding him a vexatious litigant. We find Decker's contentions meritless and affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

The record on appeal does not include a reporter's transcript. Accordingly, we treat this as a "judgment roll" appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082; *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.) The limited record we have establishes the following:

In November 2013, Decker filed the instant action against Pulapkura, alleging that Pulapkura, Decker's former supervisor, negligently inflicted emotional distress by initiating a "religious-theme conversation" with him, writing him a letter about a dream Pulapkura had wherein Decker asked Pulapkura about God, and providing him with religious materials.

Pulapkura moved for an order requiring Decker to furnish security, to obtain a prefiling order, or, in the alternative, for dismissal of the action pursuant to section 391, subdivision (b)(2) because the trial court had already finally determined Decker's claim was barred.[2] In support of his motion, Pulapkura presented evidence of the following:

1. In October 2012, Decker and VESTRA Resources Inc. (VESTRA) entered into a settlement agreement and release in which Decker was paid $7,000 to release the

_____

[2] Section 391, subdivision (b)(2) provides that a person is a vexatious litigant if, "[a]fter a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendant as to whom the litigation was finally determined."

company, and all of its employees, among others, from any liability relating to Decker's employment with or separation from the company, among others.

2. In March 2013, Decker filed an action against Pulapkura, case No. 176788, alleging intentional infliction of emotional distress based on the same religious conversations and communications between Pulapkura and Decker. Pulapkura successfully demurred to Decker's complaint on the basis of workers' compensation exclusivity and insufficiency of the pleadings, and the trial court entered judgment in favor of Pulapkura in this action on August 1, 2013.

3. In March 2013, Decker also sued VESTRA and its attorney, in case No. 176787, seeking rescission of a settlement agreement allegedly obtained as a result of duress and coercion, and damages for intentional infliction of emotional distress, religious discrimination, and wrongful termination relative to the same religious conversations and communications between Pulapkura and Decker, as well as intentional infliction of emotional distress based on communication from VESTRA's counsel regarding Decker's earlier litigation against VESTRA. The trial court granted VESTRA's special motion to strike the pleadings pursuant to the anti-SLAPP statutes (§ 425.16 et seq.), finding plaintiff had not established a probability of prevailing based on the claim he had entered into the settlement agreement under duress based solely on a letter from VESTRA's counsel because the letter was protected activity. VESTRA's counsel also successfully demurred to the complaint. The trial court entered judgment in favor of VESTRA and its counsel on August 5, 2013. Decker unsuccessfully appealed a subsequent order awarding VESTRA attorney fees associated with this action.

4. In June 2013, Decker wrote an e-mail to VESTRA and Pulapkura's counsel indicating that regardless of whether he won or lost his suit, he would consider himself to have been successful, and that he was planning to file another suit against Pulapkura's "church." A couple of weeks later, Decker wrote another e-mail threatening to pursue a complaint with the State Bar regarding VESTRA and Pulapkura's counsel regardless of

the outcome of the litigation against Pulapkura. The e-mail then denigrates counsel and VESTRA using a variety of unseemly personal and professional insults.

5. After judgment was entered against him in both March 2013 actions, Decker sent another e-mail to VESTRA and Pulapkura's counsel, and copied owners and employees of VESTRA. In it, he uses needlessly offensive, explicit, and derogatory language that we decline to memorialize here. Suffice it to say, Decker rejoiced in his ability "to cuss you all [the addressees] out in emails because I can," and then he spewed a litany of disparaging remarks, including his desire to see counsel and the parties die so that he could desecrate their graves. He also revealed a plan to avoid earning any income so that he could persist in his pursuit of unnecessary and frivolous litigation against the parties without consequence.

6. In October 2013, VESTRA obtained a workplace violence restraining order against Decker, prohibiting him from harassing its employees and counsel and their families. After the workplace restraining order was sought, Decker sent another e-mail to the attorney. In it he claimed he would sue the attorney again for damages, and continued to threaten to sue Pulapkura's church.

7. Prior to filing the instant action, Decker offered to forebear filing the complaint if VESTRA would agree not to collect any fees from Decker. In the e-mail offering not to file his complaint, Decker also indicated he was contemplating filing actions against the attorney, Pulapkura's church and several other VESTRA employees personally, and to report VESTRA for false billings to the State Auditor. Decker wrote, "I'm going to ramp up ramp up ramp up . . . I've been barking for too long." He also intimated that he was and had plans to continue to make it impossible for Pulapkura or VESTRA to recover any costs or fees from him. A couple weeks later, in mid-November 2013, Decker wrote to the attorneys again, stating that he would file against Pulapkura again, and Pulapkura's church, and Pulapkura's wife. The e-mail continued to denigrate the attorneys with coarse and inappropriate language.

8.      After he filed the instant action, he wrote to the attorney again, indicating his willingness to pursue an appeal if Pulapkura successfully demurred, his readiness to sue other individual employees of VESTRA, and his continued pursuit of claims with the State Bar and State Auditor.  In this e-mail, Decker stated, "Someday I'll petition the Supreme Court I'm sure, for what cause I have no idea yet."  He also stated, "I'll sue the sun for coming up. . . .  I'll take a $100[,000] loss to my grave knowing I went down on my terms. . . .  And this cycle will continue and continue."  He further mocked the judicial process by scoffing at the restraining order obtained against him.

Decker objected to Pulapkura's motion, arguing (contrary to the trial court's prior ruling) that his claim was not barred by workers' compensation exclusivity because Pulapkura's conduct "exceed[ed] the normal risks of the employment relationship," that there had been no final determination of his instant cause of action, and that he did not meet the statutory definition of a vexatious litigant.  The trial court apparently issued an order on February 3, 2014; however, that order is not contained in the record before us on appeal, and the order was vacated by the trial court's February 13, 2014 minute order in which it continued the hearing on Pulapkura's motion to March 3, 2014, finding Decker did not receive adequate notice of the prior hearing date and time.

In advance of the continued hearing, the trial court issued a tentative ruling indicating its finding that Decker had not engaged in relitigation of a finally determined issue, but indicating that in light of the evidence presented in support of the motion, the trial court believed Decker had "engaged in tactics that are frivolous or tactics intended solely to cause unnecessary delay, and, even worse, in bad faith," rendering him a vexatious litigant pursuant to section 391, subdivision (b)(3).  The trial court further indicated it did not appear Decker had a reasonable probability of prevailing in the instant action; thus, it stated its intention of requiring him to furnish security of $35,000 in the instant action.  However, because it was proceeding under a different theory than that

5

proposed by Pulapkura, the trial court set a schedule for further briefing and continued the hearing to March 24, 2014.

Decker submitted a brief arguing that the vexatious litigant statutes as a whole and section 391, subdivision (b)(3) in particular are unconstitutional and that neither Pulapkura nor the trial court had shown him to be a vexatious litigant pursuant to section 391, subdivision (b)(3). Pulapkura argued Decker was a vexatious litigant pursuant to section 391, subdivision (b)(3) because he had not only maintained multiple meritless actions attempting to relitigate decided issues, but threatened "endless litigation" against VESTRA and its employees and barraged them with "rude, obnoxious, threatening and extortionate correspondence."

Following the briefing of the parties, the trial court issued an order dated April 8, 2014, finding Decker to be a vexatious litigant as defined in Code of Civil Procedure section 391, subdivision (b)(3). The trial court further found there was "no reasonable probability" that Decker would prevail in his litigation, and ordered Decker, pursuant to section 391.3, subdivision (a), "to furnish security for the benefit of [Pulapkura] in the amount of $35,000 to assure payment of reasonable litigation expenses in the event [Pulapkura] prevails in this action. The amount of $35,000 must be furnished no later than 20 days from service of notice of entry of order requiring security. If the security is not furnished, the action will be dismissed." The trial court explicitly declined to subject Decker to a prefiling order pursuant to section 391.7.

On May 19, 2014, the trial court held a hearing regarding the status of Decker's provision of security. Following the hearing, on June 6, 2014, the trial court entered an order finding Decker had failed to furnish the ordered security and dismissing Decker's action against Pulapkura pursuant to section 391.4. And, on June 24, 2014, the trial court entered a judgment of dismissal for failure to furnish security pursuant to section 391.4.

6

On June 24, 2014, Decker appealed challenging the trial court's dismissal of his action for failure to furnish security pursuant to sections 391.3 and 391.4 of the Code of Civil Procedure.[3]

DISCUSSION

On appeal, we must presume the trial court's judgment is correct. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Thus, we must adopt all inferences in favor of the judgment, unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.) The party challenging a judgment bears the burden to provide an adequate record to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) When an appeal is "on the judgment roll," (*Allen v. Toten*, *supra*, 172 Cal.App.3d at p. 1082) we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; Cal. Rules of Court, rule 8.163.) These restrictive rules of appellate procedure apply to Decker even though he is representing himself on appeal. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795; *Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.)

" 'The vexatious litigant statutes (§§ 391 – [391.8]) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants. [Citation.] Sections 391 to 391.6 were enacted in 1963, while section 391.7 . . . was added in 1990. [Citations.] [¶] "Vexatious litigant" is defined in section 391, subdivision (b) as a person who has, while acting in propria persona, initiated or

---

[3]    The request for judicial notice filed by defendant on January 20, 2015, is denied.

7

prosecuted numerous meritless litigations, relitigated or attempted to relitigate matters previously determined against him or her, repeatedly pursued unmeritorious or frivolous tactics in litigation, or who has previously been declared a vexatious litigant in a related action.' [Citation.]" (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1345.) When a person has been deemed a vexatious litigant, they may be required to furnish security when they have no reasonable probability of prevailing against the defendant (§ 391.1) and they may be subjected to a prefiling order (§ 391.7). Where a vexatious litigant has been required to furnish security and fails to do so, the trial court must dismiss the action. (§ 391.4.)

Here, Decker challenges the constitutionality of the vexatious litigant statutes generally, and specifically challenges the constitutionality of section 391, subdivision (b)(3). Decker further contends the trial court erred in finding him a vexatious litigant and in requiring him to furnish security. For the reasons stated below, we reject all of these claims.

I

*Constitutionality of Vexatious Litigant Statutes*

Decker claims section 391 et seq., including specifically section 391, subdivision (b)(3), are unconstitutionally vague, are premised on a discriminatory classification, may not be applied to him because he lacked fair notice of the statutory scheme, and pose an unlawful "chilling effect" on his right to access the courts. We conclude the language of section 391, subdivision (b)(3) is abundantly clear, the application of the vexatious litigant statutes to those appearing in propria persona only is not discriminatory, Decker had sufficient notice of the statutes, and his access to the courts has not been unlawfully chilled.

A.      *Vagueness*

Decker contends section 391, subdivision (b)(3) is unconstitutionally vague, essentially because he did not understand it.  Section 391, subdivision (b)(3) defines a " 'vexatious litigant' " as someone who, "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."  Decker specifically objects to the inclusion of the terms " 'tactics that are frivolous' " and " 'repeatedly files other papers.' "  A reading of this language in the context of the statute and in light of common English usage renders this attack groundless.

" 'Frivolous' " is statutorily defined elsewhere as "totally and completely without merit or for the sole purpose of harassing an opposing party."  (§ 128.5, subd. (b)(2).)  And it has been defined in the context of the vexatious litigant statutes as a " ' " 'flagrant abuse of the system,' " ' " having ' "no reasonable probability of success," ' or lacking ' "reasonable or probable cause or excuse." ' [Citation.]"  (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 639, fn. 29 (*Golin*).)  "Tactics" may be defined as "employing available means to accomplish an end."  (Merriam-Webster's Collegiate Dictionary (11th ed. 2006) p. 1272.)  Therefore, a defendant engages in "frivolous tactics" if he flagrantly abuses the system, or uses means that have no reasonable probability of success or lack reasonable or probable cause or excuse to accomplish his goal.  The phrase is not vague in this context and in light of common English usage.

Additionally, we reject Decker's claim that "other papers" renders the statute unconstitutionally vague as meritless.  A "motion" is "[a]n application for an order." (§ 1003.)  "The pleadings are the formal allegations by the parties of their respective claims and defenses, for the judgment of the court," i.e., "complaints, demurrers, answers, and cross-complaints."  (§§ 420, 422.10.)  It is then abundantly clear that as

9

used in section 391, subdivision (b)(3), "other papers" are anything written on paper submitted to the court for filing other than "motions" or "pleadings."

B.      *Discriminatory Classification*

Decker contends section 391 et seq. is unconstitutional because it unlawfully discriminates against litigants proceeding in propria persona. He claims the classification is underinclusive because represented litigants may engage in tactics that are equally as vexatious. In accordance with longstanding precedent, we reject Decker's contention.

"[A] state may set the terms on which it will permit litigation in its courts. The restriction of section 391 . . . to persons proceeding in propria persona is not arbitrary or unreasonable. Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to litigants in propria persona. There is no constitutional requirement of uniform treatment of all persons but only that there be a reasonable basis for each classification [citation]." (*Taliaferro v. Hoogs* (1965) 236 Cal.App.2d 521, 527.)[4] Here, there is a rational basis to classify litigants who proceed in propria persona differently than those represented by counsel for purposes of section 391 because of the potential sanctions that apply only to counsel. Therefore, section 391 et seq. does not unlawfully discriminate against litigants proceeding in propria persona.

---

[4]      Indeed, had an attorney engaged in the kind of conduct Decker did, he or she would be subject to censure and, potentially, suspension or disbarment. (See Cal. Rules of Court, rule 9.4 [including in the attorney's oath a promise " '[a]s an officer of the court; . . . to strive to conduct [one's self] at all times with dignity, courtesy, and integrity' "]; Bus. & Prof. Code, § 6103 [violation of the oath "constitute[s] cause[] for disbarment or suspension"].)

C. *Right to Access Courts*

To the extent Decker challenges the constitutionality of section 391 et seq. based on the "chilling effect" of prefiling orders authorized by section 391.7, we do not reach the contention because he is not the subject of any such prefiling order.

D. *Fair Notice*

Decker further complains that he did not have "fair notice" of the statute. Decker, like the rest of us, is charged with knowledge of the law and is not entitled to claim he was ignorant of it. (See *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 244; see also *Hale v. Morgan* (1978) 22 Cal.3d 388, 396; *People v. O'Brien* (1892) 96 Cal. 171, 176; *County of Los Angeles v. Salas* (1995) 38 Cal.App.4th 510, 516.) For it " 'is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.' " (*People v. Noori* (2006) 136 Cal.App.4th 964, 978.) Accordingly, Decker's claim is meritless.

II

*Application of Vexatious Litigant Statutes to Decker*

Decker contends we should reverse the trial court's rulings that he is a vexatious litigant and that he was required to furnish security in his litigation against Pulapkura because (1) the trial court erred in finding he met the statutory definition of a vexatious litigant pursuant to section 391, subdivision (b)(3), (2) the trial court erred in requiring him to furnish security because he had a probability of prevailing on the merits, (3) he was not afforded the opportunity to show the vexatious litigant designation should be removed, and (4) the trial court violated his due process in finding him a vexatious litigant under a different subdivision of section 391 than was relied upon by Pulapkura. We find no error in the trial court's findings that Decker is a vexatious litigant and that he should be required to furnish security in the instant case. We also conclude Decker forfeits his claim that he was denied the opportunity to seek removal of the vexatious litigant designation, and his due process claim is specious.

11

A.      *Vexatious Litigant Finding*

Decker contends there was insufficient evidence to support the conclusion he was a vexatious litigant pursuant to section 391, subdivision (b)(3), and that the trial court abused its discretion in relying on a finding that Decker had acted in bad faith and engaged in "tactics" when it concluded he was a vexatious litigant. "The trial court exercises its discretion in determining whether a person is a vexatious litigant. Review of the order is accordingly limited and [we] will uphold the ruling if it is supported by substantial evidence. Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. [Citations.]" (*Golin*, *supra*, 190 Cal.App.4th at p. 636.) Since this is a judgment roll appeal, we conclusively presume there is sufficient evidence to support the trial court's findings. We reject as specious Decker's contention that he was not, as a matter of law, a vexatious litigant pursuant to section 391, subdivision (b)(3) because he engaged in only a single "tactic" by repeatedly sending obnoxious, harassing, and frivolous e-mails as opposed to employing a multitude of tactics. Accordingly, based on the record before us, we conclude the trial court did not err in finding Decker to be a vexatious litigant.

B.      *Security Requirement*

Decker contends he established a probability of prevailing on his claim by challenging the trial court's interpretation of the evidence regarding Decker's settlement agreement with his former employer, and absent the settlement agreement he could pursue emotional distress claims against Pulapkura. As with a finding that a litigant is vexatious, "a court's decision that a vexatious litigant does not have a reasonable chance of success in the action is based on an evaluative judgment in which the court weighs the evidence. If there is any substantial evidence to support the court's determination, it will be upheld." (*Golin*, *supra*, 190 Cal.App.4th at p. 636.) And, because this is a judgment roll appeal, we conclusively presume the trial court's findings are supported by

12

substantial evidence.  Here, the trial court found Decker did not have a probability of prevailing on the merits, and we find no error in this regard appearing on the face of the record.

C.    *Removal from Designation*

Decker contends he was denied the opportunity to establish he had satisfied the criteria for removal from the designation of vexatious litigant.  However, Decker has not cited any factual authority for this proposition, nor has he developed any cogent argument to support the contention.  Accordingly, we deem the contention forfeited.  (Cal. Rules of Court, rule 8.204(a)(1)(C); *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [failure to cite to the record forfeits a claim of error on appeal].)

D.    *Fair Notice*

Decker contends the trial court violated his due process rights by finding him to be a vexatious litigant pursuant to section 391, subdivision (b)(3) because Pulapkura's motion was premised on a claim that Decker was a vexatious litigant pursuant to section 391, subdivision (b)(2).  The record reflects the trial court expressly recognized that it was proceeding on a different theory than that presented by Pulapkura and provided both parties ample time to address that new theory prior to ruling on the motion.  Not only did this provide Decker fair notice of the basis for finding him a vexatious litigant, but Decker actually took advantage of the opportunity and submitted a 20-page brief addressing that basis.  To contend now that he was not provided fair notice is simply frivolous.

13

DISPOSITION

The judgment is affirmed.  Pulapkura is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


_____NICHOLSON_____, Acting P. J.


We concur:


_____ROBIE_____, J.


_____BUTZ_____, J.