### PEOPLE v. BROWN et al.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

FORGERY (§ 15*)—FORGERY IN THIRD DEGREE—NATURE OF OFFENSE—STATUTORY PROVISIONS.

 Pen. Code, § 515, provides that a person who, with intent to defraud or conceal any misappropriation of any money or property, either (1) alters or destroys an account, book of accounts, etc., belonging to the business of a corporation or partnership, or (2) makes a false entry in any such account or book of accounts, or (3) willfully omits to make true entry of any material particular in such account or book of accounts kept by him, is guilty of forgery in the third degree. *Held*, that the object of the statute is to protect the corporation, partnership, or individual owning account books from being defrauded by false entries or alterations therein by those charged with their custody, and the members of a firm could not be convicted thereunder because, at their request, an accountant employed by them to make up a statement of their financial condition placed in their ledger an untrue item as to capital account of a certain sum, which item was not shown to anybody, and upon the face of which no one advanced money nor credit, simply because a statement of the firm's resources issued to commercial agencies, upon which credit was advanced to the firm, contained such item.

 [Ed. Note.—For other cases, see Forgery, Cent. Dig. § 50; Dec. Dig. §·15.*]

Appeal from Court of General Sessions, New York County.

Louis Brown and another were convicted of forgery in the third degree, and they appeal. Reversed, and defendants discharged.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Gustavus A. Rogers and Saul E. Rogers (Morgan J. O'Brien, of counsel), for appellant Taub.

Meyer D. Siegel, for appellant Brown.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for respondent.

CLARKE, J. The indictment charges that on January 1, 1907, the defendants, being copartners in trade under the firm name of Brown & Taub, "with intent to defraud, did feloniously make in a certain book account, called ledger, belonging to and appertaining to the business of the said copartners, and kept by them, the said copartners, in the said business, to wit, on the thirteenth page of the said ledger,.

under the said heading therein as follows: 'L. Brown, Capital Acct.,' a certain false entry as follows, to wit: 'Jan. 1. Sundries, $26,345.84,' which said entry then and there purported to set forth and indicate, and did in substance and effect then and there signify and declare, that at the opening of the said first day of January, in the year aforesaid, the share and interest of the said Louis Brown, such copartner as aforesaid, and the net capital and surplus of the said copartners then and there invested in their said business, that is to say, in the amount of the value of the total assets then and there owned by and belonging to the said copartners, less the amount of the liabilities then and there due and owing from the said copartners, and then and there outstanding, was twenty-six thousand three hundred forty-five dollars and eight-four cents"; whereas, the share in the net capital and surplus of said Brown was then far less than the said sum, and was then $5,787.32, as the defendants well knew.

Section 515 of the Penal Code provides that:

"A person who, with intent to defraud or to conceal any larceny, or misappropriation by any person, of any money or property, either (1) alters, erases, obliterates or destroys an account, book of accounts, record or writing, belonging to, or appertaining to the business of, a corporation, association, public office or officer, partnership, or individual; or (2) makes a false entry in any such account or book of accounts; or (3) willfully omits to make true entry of any material particular in such account or book of accounts, made, written, or kept by him, or under his direction—is guilty of forgery in the third degree."

The defendants had been partners in business. About the 1st of January, 1907, they employed an accountant to examine their books of account and instructed him to open a new set of books as of the 1st of January, 1907. He testified:

"I was instructed by the defendants to open up the books, and was told to bring forward some of the information which would form the basis of the new books from the old books. Such matters as the inventory of merchandise was not contained in the old books."

They gave him as the amount of their inventory of merchandise at the close of the year 1906 the amount of $49,978.25. This is claimed to have been a false statement. The accountant testified that some weeks later they said that the inventory figures given on January 1st were wrong; that the correct amount was $25,243.66. The merchandise account did not appear in the old books, nor did the item, "Merchandise, $49,978.25," appear in the books that were opened.

Defendants have been indicted because the accountant entered in the capital account of Brown the item: "Jan. 1. Sundries, $26,345.84." It is evident that this is not one-half of the merchandise account alluded to, for that would be $24,986.12. At the request of the defendants the accountant made up a statement of financial condition, dated January 2, 1907, which was signed by the defendants, and to which the accountant attached the following certificate:

"I hereby certify that the above is a true and correct statement 'as shown by the books of Brown & Taub."

This statement, under the head "Assets," included the item "Merchandise on hand, cost, $49,978.25," and with other items totaled as

available assets $80,884.32. Under the heading "Liabilities" there were entered:

"For merchandise on hand in transit, $24,607.88; loans from banks, $6,500; other obligations, $8,476. Total liabilities, $31,992.64. Surplus in business, $49,691.68. Equity in real estate, $3,000. Total worth in and out of the business, $52,691.68."

One-half of the latter sum—that is, the amount entered upon the statement as the total worth in and out of the business of the firm—amounts to $26,345.84, the precise amount entered in the capital account to the credit of Brown as sundries. It thus appears that the financial statement sent to the agencies was not based upon the item in the ledger complained of, but that item was obtained by calculation from the statement itself. The statement so made up was sent to various commercial agencies. The firm continued in business during the year 1907, and obtained credit from various persons in reliance upon the statement so furnished. In January, 1908, the defendants went into bankruptcy.

The defendants have been indicted and convicted, not for obtaining money, goods, or credit upon false pretenses by means of the false statement sent out to the commercial agencies, containing the false claim of possessing on the 1st of January, 1907, merchandise of the cost price of $49,978.25, but for forgery in the third degree under the section of the Penal Code cited, because the accountant placed in their ledger an item to capital account of $26,345.84, which was not shown to any one, and upon the faith and credit of which no one advanced a dollar of credit or sold a particle of goods. We are of opinion that the proof failed to establish the crime charged under the statute relied upon.

We do not think that the entry of such an item in the capital account of one of the partners in the ledger, under the circumstances disclosed, comes within the purview of the statute. Reading the entire section, it is apparent that what was aimed at was to prevent fraud in the keeping of books by those charged with the custody and control thereof. As said by the Court of Appeals in People ex rel. Hegeman v. Corrigan, 195 N. Y. 1, 87 N. E. 792, alluding to section 515 of the Penal Code:

"To constitute that offense the false entries or alterations must be made 'with intent to defraud or to conceal any larceny or misappropriation by any person of any money or property.' The entries of which complaint is made at most simply purport to show that the loans were made on the date of such entries. It may be that these entries tended to deceive any one examining the company's books; but they could in no way operate to defraud the company or any one else. Nor had there been any larceny or misappropriation which the entries could serve to conceal or cover up."

The object in view in this statute, as it seems to us, was to protect the corporation, association, partnership, or individual who owned the books from being defrauded by means of false entries or alterations therein. The statute was intended to be a protection against domestic or internal attack, against treachery and betrayal from within, and, so read, all of its parts are consistent, and the statute itself is reasonable. We do not deem it possible to attribute an intent to defraud to

the making of an entry which was never seen by the parties who gave the credit and who had no knowledge thereof. Said entry was in no way the basis of their action. It must be borne in mind that it was the evidence of the persons who advanced credit on the faith of the statement which alone was relied upon for the purpose of proving criminal intent in the making of the ledger entry. The fraud relied upon was the statement issued to the commercial agencies, and the evidence was that, relying upon that statement, the credit was advanced. It was entirely unnecessary to go behind said statement, and it seems to us to be an entirely unreasonable and far-fetched interpretation of the statute to hold that it could possibly apply to the situation disclosed, or that the crime of forgery in the third degree has been committed thereunder.

It follows, therefore, that the judgment of conviction should be reversed, and the defendants discharged. All concur.