## COURT OF APPEALS.

October 3, 1911.

# THE PEOPLE ex rel. ISAACSON v. JOHN J. FALLON, WARDEN, ETC.

(202 N. Y. 456.)

FORGERY—WHEN OMISSION TO ENTER BUSINESS TRANSACTIONS IN PRIVATE BOOKS OF ACCOUNT, WITH INTENT TO DEFRAUD CREDITORS, DOES NOT CONSTITUTE CRIME OF FORGERY.

At common law an individual may keep books of account of all or part of his transactions, or he may omit to do so altogether. So far as the statute includes within the definition of forgery the falsification of books of account by erroneous entries or by omissions to enter any material particulars relating to the transaction of the business of an individual, it refers to entries or omissions by persons who have a duty as employees or in other similar capacities to keep true books of account of the business of the employer. It was not intended to and does not include a person who omits an entry of a business transaction from his own books of account with intent to conceal from his creditors the disposition of his property.

People ex rel. Isaacson v. Fallon, 142 App. Div. 908, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the Second Judicial Department, entered December 30, 1910, which affirmed an order of Special Term sustaining writs of habeas corpus and certiorari and discharging the relator from custody.

The facts, so far as material, are stated in the opinion.

*John F. Clarke,* District Attorney (*Frederick B. Bailey,* of counsel), for appellant. The case is within the strict letter of the statute. (Penal Law, § 889.) The relator willfully falsified the books with intent to defraud and to conceal. (People v. Hegeman, 57 Misc. Rep. 295; Phelps v. People, 72 N. Y. 365.) The literal reading is the reasonable one. (Hegeman v. Corrigan, 195 N. Y. 1.) The literal reading is in harmony with the rest of the statute and the rest of the criminal law. (Penal

Code, § 515; Penal Law, § 889; People v. Jaehne, 103 N. Y. 182; People v. Sherman, 133 N. Y. 349; People v. Martin, 175 N. Y. 315; Peiple v. Abeel, 182 N. Y. 415.)

*Charles S. Whitman,* District Attorney (*Robert C. Taylor,* of counsel), intervening. Defendant was properly convicted under section 889 of the Penal Law. (U. S. v. Mescall, 215 U. S. 26; Tindle v. Birkett, 171 N. Y. 520; E., etc., Co. v. Avery, 83 N. Y. 31; Bliss v. Sickles, 142 N. Y. 647; Bradley v. S. N. Bank, 167 N. Y. 427; Mills v. Brill, 105 App. Div. 389; People v. Levine, 119 App. Div. 233; Queen v. Most, 14 Cox C. C. 583; People v. Abeel, 182 N. Y. 415; People v. Luhrs, 195 N. Y. 377.)

*Harry E. Lewis, Charles M. Davenport* and *Oscar A. Lewis,* for respondent. Subdivision 3 of section 515 of the Penal Code was not intended to cover the case of an individual engaged in business who willfully omits to make an entry in his own books of account, but applied to an act or omission by one person in connection with the books of another person. (Matter of Hallenbeck, 65 How. Pr. 401; People v. Fanshawe, 137 N. Y. 74; People v. Richards, 108 N. Y. 144; People v. Stevens, 109 N. Y. 162; People v. Palmer, 109 N. Y. 110; Fitzgerald v. Quann, 109 N. Y. 441; Bertles v. Nunan, 92 N. Y. 152; People v. Cody, 6 Hill, 490; People v. Fitch, 1 Wend. 198; Noakes v. People, 25 N. Y. 382; People v. Harrison, 9 Barb. 562; People v. Shall, 9 Cow. 778; People v. Galloway, 7 Wend. 540; People v. Stearns, 21 Wend. 409, 23 Wend. 677.).

CHASE, J. :

In 1907 and the early part of 1908 the relator was engaged in business in the boroughs of Manhattan and Brooklyn, in the city of New York. In October, November and December, 1907, and January, 1908, he purchased, on credit, goods and merchandise of the firm of Harding, Whitman & Company, of the value of upwards of $14,000. On February 3, 1908, he secretly sold

and shortly thereafter delivered to the firm of Rabinowitz
Brothers, a quantity of voile cloth goods out of the stock of mer-
chandise owned by him for the agreed price of $510.97, less a
discount of nine per cent. for cash, which said merchandise he
had previously purchased on credit for a higher price subject to
a smaller discount, and on February 8, 1908, the relator re-
ceived from said Rabinowitz Brothers a check for $464.89 in
payment of said merchandise, and he thereupon indorsed, trans-
ferred and delivered the check so received to one Ida M. Fried-
man, to whom he was at that time engaged to be married.
Thereafter, and on or about March 2, 1908, he was adjudged a
bankrupt and admitted an indebtedness of over $70,000, includ-
ing an indebtedness to Harding, Whitman & Company for said
goods and merchandise as stated. During the times when said
transactions occurred the relator kept certain books of account
of the transactions of his business. It is alleged in the informa-
tion hereinafter mentioned that the relator " with intent to de-
fraud his creditors  *  *  *  did willfully omit to make true
entry of the material particulars of the aforesaid sale made by
him to said Rabinowitz Brothers and did willfully omit to make
true entry of the material particulars of the aforesaid receipt by
him of payment from said Rabinowitz Brothers, and did will-
fully omit to make true entry of the material particulars of the
transfer of said check as aforesaid to said Ida M. Friedman in
any of the aforesaid books of account or any entry whatever of
said sale or of said payment or of said transfer, but, on the con-
trary, with intent so to defraud his creditors the said Samuel D.
Isaacson did willfully conceal the fact of said sale to said Rab-
inowitz Brothers, did willfully conceal the fact of the receipt
of said check, and did willfully conceal the fact of the transfer
thereof to said Ida M. Friedman. That said transaction was
one of a number of similar transactions by which said Samuel
D. Isaacson did conceal from his creditors many thousands of
dollars."

In May, 1909, an information was signed by one of the part-ners of Harding, Whitman & Company, setting forth, among other things, the facts hereinbefore stated, and upon such in-formation, which was laid before a magistrate, and certain testi-mony taken in confirmation thereof, the relator was charged with the crime of forgery in the third degree, and a warrant was issued upon which he was arrested. He was taken before a city magistrate and an investigation as to the crime alleged to have been committed by him was had, which resulted in his being held to answer the charge made against him. Writs of habeas corpus and certiorari were thereupon obtained, and after a tra-verse of the return to the writs the proceedings were consolidated and a hearing was had at a Special Term of the Supreme Court. The writs were sustained and the relator was discharged from custody. An appeal was taken from the order entered there-upon to the Appellate Division, where the order was unani-mously affirmed. It is from such order of affirmance that the appeal is taken to this court.

Apart from a valid statute affecting the subject an individual may keep books of account of all or part of his transactions, or he may omit to do so altogether. There is no recognized duty at common law that requires an individual to keep a record of his business or other transactions. Whether he will keep such a record is for the determination of each individual, wholly in-dependent of the will, interest or convenience of others. It does not appear that the omission by the relator of any record in his books of the sale to Rabinowitz Brothers in any way influenced Harding, Whitman & Company to sell to the relator goods and merchandise, or to give him a credit of $14,000 and upwards. The allegations of fact upon which the warrant was issued in-clude a statement that the purchases were made from Harding, Whitman & Company prior to the sale to Rabinowitz Brothers. It is not shown that any one has been injured by reason of the failure of the relator to make such entry. The claim of the appellant rests solely upon the statute. It is claimed that an

omission to make an entry of a material particular of a personal transaction in one's own books, if with intent to conceal the same from one's creditors, is a crime, because it is made such by the statute, and that evidence of injury or prejudice to others is not an essential fact to establish the crime. It is asserted and not denied that the omission by the relator of any entry in his books of the sale to Rabinowitz Brothers was with intent to defraud. It may be assumed for the purposes of this opinion that if the statute defining forgery in the third degree was intended to and does include a person who omits an entry of a business transaction from his own books of account with intent to conceal from his creditors the disposition of his property, there was sufficient evidence against the relator to require that he be held for the action of the grand jury. The statute under which it is claimed that the relator committed a crime is section 889 of the Penal Law, which, so far as now material, reads as follows: "A person who:

" 1. Being an officer or in the employment of a corporation, association, partnership or individuals falsely, or unlawfully and corruptly alters, erases, obliterates or destroys any accounts, books of accounts, records, or other writing, belonging to or appertaining to the business of the corporation, association or partnership or individuals; * * * is guilty of forgery in the third degree.

"A person who, with intent to defraud or to conceal any larceny or misappropriation by any person of any money or property:

" 1. Alters, erases, obliterates, or destroys an account, book of accounts, record, or writing, belonging to, or appertaining to the business of, a corporation, association, public office or officer, partnership, or individual; or,

" 2. Makes a false entry in any such account or book of accounts; or,

" 3. Willfully omits to make true entry of any material par-

ticular in any such account or book of accounts, made, written, or kept by him or under his direction,

" Is guilty of forgery in the third degree." (Chapter 40, Consolidated Laws; former sections 514 and 515 of the Penal Code.)

Forgery is a crime at common law, and as such it is defined to be the fraudulent making or alteration of a writing to the prejudice of another man's right. (Blackstone's Commentaries, book 4, 247.) Forgery is also made a crime by our statutes from which we have quoted. Statutes have been enacted in this State defining and otherwise relating to the crime of forgery from time to time, commencing with chapter 20 of the Laws of 1788. Prior to the Revised Statutes published in 1829 our statute law relating to forgery did not in any way refer specifically to the keeping of books of accounts in public offices or otherwise. In the said Revised Statutes are sections 34 and 35 in part 4, chapter 1, title 3, article 3, as follows:

" Section 34. Every person who, with intent to defraud, shall make any false entry, or shall falsely alter any entry made, in any book of acocunts, kept in the office of the comptroller of this State, or in the office of treasurer, or of the surveyor-general, or of any county treasurer, by which any demand or obligation, claim, right or interest, either against, or in favor of, the people of this State, or any county or town, or any individual, shall be, or shall purport to be discharged, dismissed, increased, created, or in any manner affected, shall, upon conviction, be adjudged guilty of forgery in the third degree.

" Section 35. Every person who, with intent to defraud, shall make any false entry, or shall falsely alter any entry made, in any book of accounts kept by any monied corporation within this State, or in any book of accounts kept by any such corporation, or its officers, and delivered or intended to be delivered, to any person dealing with such corporation, by which any pecuniary obligation, claim or credit, shall be, or shall purport to

be, discharged, diminished, increased, created, or in any manner affected, shall, upon conviction, be adjudged guilty of forgery in the third degree."

When the Penal Code was enacted (Laws of 1881, chap. 676), to take effect December 1, 1882, there was included within the definitions of forgery in the second degree much of the substance of said sections 34 and 35 of the Revised Statutes of 1829; and there were also included therein sections 514 and 515, relating to forgery in the third degree in substantially the language that we have quoted from section 889 of the present Penal Law.

This court, in People v. Jaehne (103 N. Y. 182, 192), say: "The Penal Code, as its title implies, is an institute of criminal justice of general application, and was enacted in harmony with the tendency of recent legislation for the purpose of embodying in a single statute the system of criminal law applicable to the State, and substituting the statutes so enacted in place of the great number of statutes and amendments of statutes which together, before the enactment of the Code constituted the body of the criminal law. * * * It is a plain inference from these provisions that the Penal Code was intended as a revision of the prior laws in respect to crimes, and their punishment, and as a substitute for the scattered and fragmentary legislation which preceded it." The penal laws relating to forgery are not necessarily confined to the crime as defined at common law (People v. Abeel, 182 N. Y. 415), but in determining the intention of the Legislature in making the several changes in the statute it is necessary to construe the language employed in view of the essential elements of forgery at common law and the several steps leading up to the statute as it now exists.

When the Revised Statutes were enacted the sections mentioned were included, as stated by the revisers, for the purpose of guarding institutions which are compelled to intrust so much to their subordinate officers. Making false entries in a journal

of a mercantile firm by a confidential clerk and bookkeeper with intent to defraud his employer is a forgery at common law (2 Wharton's Criminal Law [7th ed.], 1431), and under said section 34 of the Revised Statutes it was held by this court in Phelps v. People (72 N. Y. 365) that where an employee of the State treasurer's office having charge of the books of account and the deposits made a false entry of a deposit in a bank as a part of a criminal scheme to purloin the funds of the State or to temporarily cover up a defalcation, he was guilty of forgery.

The definition of forgery at common law includes the actual entry or alteration of an entry in books of account with intent to defraud, where such entry or alteration of an entry may be used as evidence of the fact included therein by the person making such entry or alteration, or another against a corporation, association or individual in whose behalf the books are kept. The making of an entry or an alteration of an entry in the books of a public officer comes within the reason that makes the falsification of the books of an employer by an employee forgery at common law. The falsification of the books of a corporation, association, public office or officer, partnership or individual by any person when the act or omission of an act constituting the falsification binds the corporation, association, public office or officer, partnership or individual, or appears to be capable of being used as legal proof at some time, or in some way, or at some place, against such corporation, association, public office or officer, partnership or individual, is and should be, forgery.

The books kept by persons in public office in which they are required whether by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties and under their personal observation are generally admissible in evidence notwithstanding their authenticity is not confirmed by those usual and ordinary tests of proof, or the obligation of an oath, and the power of cross-examining the persons on whose authority the proof of the document depends. (Greenleaf on Evidence, vol. 1, sec. 483.)   So the

books of a corporation, partnership or individual are ordinarily evidence against such corporation, partnership or individual. For that reason the falsification of such books by an employee is an act to the prejudice of another man's right. There are other provisions of penal law by which a person may be punished for obtaining goods by means of cheats and false pretenses of various kinds, and the Federal Bankruptcy Act expressly provides that a discharge may be refused if the bankrupt has "with intent to conceal his financial condition destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained or * * * at any time subsequent to the first day of the four months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed or concealed, any of his property, with intent to hinder, delay or defraud his creditors. * * * " (Bankruptcy Act, sec. 14.)

The first part of section 889 of the Penal Law refers to acts by an officer or employee of a corporation, association, partnership or individual which are in themselves unlawful, while the last part of the section quoted refers to other acts of a person, where they are done or where a true entry of a material particular is omitted, with intent to defraud, or to conceal any larceny, or misappropriation by any person of any money or property. The several acts or omissions therein referred to relate to the account, book of accounts, record or writing belonging to or appertaining to the business of a " corporation, association, public office or officer, partnership or individual." Neither a corporation, association, public office or partnership can, as such, physically do or omit to do the acts which are made a crime. The acts must be performed or omitted by some person representing as an officer or employee the corporation, association, public office or partnership and thus the violation of a statute becomes a crime committed by one person to the prejudice of such corporation, association, public office or partnership and

within the underlying thought included in the common-law defi-
nition of a forgery. In case of a public officer the books of ac-
count to be kept by him are books of account on behalf of the
public; consequently the act of an officer in falsifying the books
pertaining to the office is an act of a person to the prejudice of
the people.

An individual is grouped in the statute with a corporation,
association, public office or officer and a partnership, and the
purpose of the statute in defining the crime is the same as to
each.

We are of the opinion that so far as the statute includes within
the definition of forgery the falsification of books of account by
erroneous entries or by omissions to enter any material particu-
lars relating to the transactions of the business of an individual
it refers to entries or omissions by a person who has a duty as an
employee or in other similar capacity to keep true books of ac-
count of the business of the employer.

We concur in the statement of the court in People v. Brown
(140 App. Div. 591), where, referring to the statute, it says:
" The object in view in this statute, as it seems to us, was to pro-
tect the corporation, association, partnership or individual who
owned the books from being defrauded by means of false entries
or alterations therein. The statute was intended to be a pro-
tection against domestic or internal attack, against treachery
and betrayal from within, and so read, all of its parts are con-
sistent, and the statute itself is reasonable." (Page 594.)
(See, also, People ex rel. Hegeman v. Corrigan, 195 N. Y. 1;
Mann v. People, 15 Hun, 155, 161; affd., 75 N. Y. 485; People
v. Curtiss, 118 App. Div. 259.)

The order should be affirmed.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT
and HISCOCK, JJ., concur.

Order affirmed.