### PEOPLE v. FISH. (No. 7580.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. FORGERY ⬡≔21—FORGERY IN THIRD DEGREE—ALTERATION IN FIRM'S BOOKS —PARTNER'S APPROVAL—STATUTE.

Under Penal Law (Consol. Laws, c. 40) § 889, subd. 1, providing that one in the employment of a partnership unlawfully and corruptly altering or erasing any accounts appertaining to the business is guilty of forgery in the third degree, where defendant loaned money to a partnership, and thereafter, such partnership becoming embarrassed, it was determined that defendant should be its assignee, and, it being thought desirable that his name should not appear on its books as having loaned it money, the partnership's bookkeeper, two hours before the execution of an assignment, at defendant's direction, erased his name from the books, substituting another therefor as having made the loan, a partner standing by during the operation, and expressing his approval of the act, and instructing the bookkeeper that she must obey the assignee, as he was the boss, such assignee was not guilty of forgery in the third degree, since the bookkeeper's alteration was made with the approval of her employer, who had not yet assigned, thus negativing her guilt, which precluded guilt on the part of the assignee as having corruptly aided and abetted her to commit such crime.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. § 57; Dec. Dig. ⬡≔21.]

2. FORGERY ⬡≔21—FORGERY IN THIRD DEGREE—ALTERATION WITHOUT PROFIT TO BOOKKEEPER —STATUTE.

Under Penal Law (Consol. Laws, c. 40) § 889, subd. 4, cl. 4, as amended by Laws 1912, c. 342, providing that the altering of any book of account by any person by his own hand or another's, if made with intent to conceal from creditors, or other persons interested, matters affecting the financial condition of any partnership, shall render such person guilty of forgery in the third degree, but that the provision shall not apply to any employé, who, without personal profit or gain, merely executes the orders of his employer, where those interested in an embarrassed firm thought it desirable that the prospective assignee's name should not appear on the books of the firm as having made a loan to it, so that two hours before the execution of the assignment the entry was erased by the bookkeeper, who received no profit, and had no expectation of profit, by the direction of a partner and the assignee, such bookkeeper was not guilty of forgery in the third degree, so that the assignee could not be guilty as having corruptly aided and abetted her to commit such crime.

[Ed. Note.—For other cases, see Forgery, Cent. Dig. § 57; Dec. Dig. ⬡≔21.]

Appeal from Court of General Sessions, New York County.

Hyman Fish was convicted of forgery in the third degree, and he appeals from the judgment, and from orders denying his motions for new trial and in arrest of judgment. Judgment reversed, and defendant discharged.

---

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

William Travers Jerome, of New York City, for appellant.

Robert C. Taylor, of New York City, for the People.

HOTCHKISS, J.   The indictment charged defendant with forgery in the third degree, in that he aided and abetted one Gertrude Gutman, an employé of Moses Gutman and Harry Gutman, copartners in trade, in corruptly altering a certain account book appertaining to the business of the firm.   It is apparent, therefore, that whether defendant was guilty of a crime must depend upon whether the act of Gertrude Gutman was a criminal act.   Briefly, the salient facts of the alleged crime, as proven by the witnesses for the people, were as follows:

The two Gutmans were copartners under the firm name of M. Gutman & Son, and Gertrude Gutman was a bookkeeper in their employ. Among the regular books of entry kept by the firm was one called a "deposit book," in which it was the custom to enter the firm's bank deposits, and to record in such book, among other things, the name of the person from whom the check was received, the date of the deposit, and the bank in which such deposit was made.   On or about November 7, 1912, the firm, being then in embarrassed circumstances, borrowed from the defendant $1,000, the proceeds of which loan, amounting to $982.50, was represented by defendant's check, and thereupon the following entry was made in said deposit book: "Germania; Nov. 7; H. Fish; 982.50"—meaning that on that day they had received from defendant his check for $982.50 and had deposited the same in the Germania Bank.   Thereafter defendant and Moses Gutman had a number of interviews at which the business and affairs of the firm were discussed.   From information obtained at these interviews, it came to defendant's knowledge that the firm was insolvent, and he advised the members thereof to make a general assignment for the benefit of creditors, and also procure certain friendly creditors to thereafter file a petition in bankruptcy against the firm; the purpose of the assignment being to lay a foundation for an application to the bankruptcy court to appoint the assignee the receiver of the firm in bankruptcy.   In pursuance of this advice, it was arranged that the defendant should become the assignee of the firm, and on December 16, 1912, the firm executed and delivered to defendant an instrument of assignment, which was duly filed, and shortly thereafter and on the same day an involuntary petition in bankruptcy was filed against the firm, in pursuance of which it was adjudicated a bankrupt.

Early on the morning of December 16th, and some two hours before the execution of the assignment, as the result of an arrangement with Moses Gutman and on the statement of defendant, who was about to become assignee of the firm, that it was desirable that he should not appear to be a creditor thereof, Moses Gutman delivered to the defendant checks and notes, representing receivables of the firm, of the face value of $1,000, in payment of defendant's said loan, which was not then due.   Defendant then asked if his name appeared on the firm books, and, having been told that it appeared in the deposit book, de-

fendant said that the entry must be gotten rid of, and under the defendant's instructions Gertrude erased from such entry the name "H. Fish," and substituted "S. Katz" therefor; the defendant being present while the act of erasing took place and expressing his approval of the result when the alteration was completed. It appeared beyond dispute that Moses Gutman was present and took part in the above conversation. With respect to the instructions under which Gertrude acted, Moses swore as follows:

"We went into the office, and we found out that the name did appear in the deposit book; * * * so he [defendant] told my daughter there in the office to mark it. She asked me, and I said: 'Well, I am not the boss any more; Mr. Fish is the boss; he has taken the business over, and you got to listen to him now. I am not the boss any more. Well, if he tells you, do it; he is the boss.'"

Thereupon Gertrude proceeded to make the alteration. It is manifest from the foregoing that at the time the act of altering the book took place the firm of M. Gutman & Son was still in possession and control of its business and of the books appertaining thereto, and that Gertrude was the servant of the firm and subject to the control of the members thereof. Whatever she did in the matter of altering the deposit book was done by the direction of Moses Gutman. Conceding that the defendant also instructed Gertrude to make the alteration, and that he aided and abetted her in making the same, nevertheless Gertrude's *authority* was derived from Moses, who was necessarily the principal, and whatever defendant did must be taken to have been done as the agent of or with the acquiescence of Moses.

[1, 2] The learned district attorney asserts that the defendant was indicted and convicted under the first subdivision of section 889 of the Penal Law, which he argues is sufficient in itself to sustain the conviction; but, if this be not so, then that the first subdivision of section 889, read in conjunction with the fourth subdivision of the second portion of section 889, affords ample foundation for the judgment under review. Section 889 bears the title "Forgery in Third Degree." Subdivision 1 of the first portion of the section is as follows:

"1. Being an officer or in the employment of a corporation, association, partnership or individuals falsifies, or unlawfully and corruptly alters, erases, obliterates or destroys any accounts, books of accounts, records, or other writing, belonging to or appertaining to the business of the corporation, association or partnership, * * * is guilty of forgery in the third degree."

It was settled by the decision in People ex rel. Isaacson v. Fallon, 202 N. Y. 456, 96 N. E. 96, that the above subdivision was intended to protect employers against the acts of their own employés, or others having a duty to keep true books of account of the business of the employer, and who sought to defraud by means of false entries or alterations; that it "was intended to be a protection against domestic or internal attack, against treachery and betrayal from within." It is apparent, therefore, that an employé who by the direction of or with the approbation or concurrence of his employer makes an alteration in the account books of the latter is not guilty of a crime within the meaning of the above subdivision, and that we must look further for authority to sustain the conviction of this defendant. Subdivision 4 of

the second portion of section 889, to which I have referred, provides that:

The "altering, erasing, obliterating, or destruction of any account, book of account, * * * by *any person*, whether by his own hand or the hand of another, if made with intent to defraud creditors or to conceal a crime, or to conceal from creditors or stockholders or other persons interested in matters materially affecting the financial condition of any individual, corporation, association, or partnership, * * * shall render such person guilty of forgery in the third degree, within the meaning of this section; but this provision shall not apply to any clerk, bookkeeper, or other employé, who, without personal profit or gain, merely executes the orders of his employer."

There is no claim on the part of the people that the act of Gertrude Gutman in making the erasure in question involved any "personal profit or gain," or the expectation thereof, on her part. As I have shown, the proof was that she did no more than execute the order of her employer. Under these circumstances the evidence wholly failed to show the commission of any crime on her part, and for this reason the conviction of the defendant was without evidence to sustain it.

The judgment should be reversed, and the defendant discharged.

INGRAHAM, P. J., and SCOTT and DOWLING, JJ., concur.

CLARKE, J. I concur. Defendant was indicted under one clause of a section of the Penal Law, and the conviction is sought to be sustained under another, which is not applicable.